UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO: 1:20-CV-00038-MOC-WCM

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| **vs.** ) | |
| ) | |
| **MARK NICHOLAS PYATT, and** ) | |
| **WINSTON REED INVESTMENTS L.L.C.,** ) | **ORDER** |
| ) | |
| Defendants, ) | |
| ) | |
| **DANIEL GREGORY RANDOLPH,** ) | |
| ) | |
| Relief Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court following a hearing for Defendants to show cause why this Court should not extend the terms of the temporary restraining order entered against Defendants Mark Pyatt and Winston Reed Investments (Doc. No. 6) and, thus, grant a preliminary injunction against Defendants.[1] For reasons explained below, the Court hereby enjoins Defendants pending the resolution of this matter or further order of this Court.

In accordance with its prior Order (Doc. No. 14), this Court held a preliminary injunction hearing on March 6, 2020. There, the SEC submitted uncontroverted testimony, exhibits, and affidavits demonstrating the following:[2] From April 2017 to February 2019, Pyatt offered and sold securities in the form of investment contracts in Winston Reed. He solicited investments in

---

[1] The Court previously entered a preliminary injunction against Relief Defendant Daniel Randolph. (Doc. No. 17).

[2] Courts routinely consider uncontroverted affidavits when deciding whether to issue a preliminary injunction. See, e.g., Elrod v. Burns, 427 U.S. 347, 350 n.1 (1976); G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd., 822 F.3d 709, 725 (4th Cir. 2016), vacated and remanded on other grounds, 137 S. Ct. 1239 (2017).

person, on the telephone, and by email. Through those conversations, Pyatt and Winston Reed secured at least $218,000 from 20 investors in North Carolina and elsewhere.

Investors parted with their funds because of Pyatt's seemingly generous terms, which are embodied in an "Investment Agreement." (Ex. 2). In that agreement, Pyatt represented that "all [invested] funds" would be "pooled into one account" to reduce risk, then traded "daily, Mon-Fri, at a minimum of 50 weeks per annum" in the "Futures" and "Forex" trading market. (Id.). Moreover, "the low average expected return on investments . . . [would be] 15% per month." (Id.). Finally, the "fee for the [investment] services . . . [would] be 10% of all gains" and "there [would be] no fees if [Winston Reed did] not make a profit for" the investor. (Id.).

Once individuals invested, Pyatt routinely emailed financial reports assuring he had made "a LOT of money" for them. (Ex. 4). For example, in a January 2018 "Fiscal Report," Pyatt told two investors that he had made "240% on [their] money in just a matter of 3 months." (Id.). On February 7, 2019, however, Pyatt reported "a complete and catastrophic loss" of all funds. (Ex. 9). According to him, a brokerage firm had failed to place a stop order in connection with Winston Reed's position in two securities. (Id.). Pyatt told his investors that he had hired a legal team to recover the lost funds, and on "Monday, August 12th, the proper paperwork [was] filed at the county courthouse for a civil suit against [the brokerage firm for] suspicious handling of our pooled accounts." (Ex. 12). Pyatt also informed the investors that he was planning to create a "new trading platform" that "works to benefit" the investors. (Id.)

Contrary to Pyatt's statements to investors, no lawsuit was ever filed in the county courthouse. Nor did Pyatt ever purchase those two securities. In fact, most of the funds were not used for trading at all, but for his own personal expenses. (Doc. No. 4-2 ¶ 19). Of the small portion of funds that were actually traded, Pyatt substantially misrepresented the trading activity, gains

and losses, and amount of money within the investor accounts.  For example, contrary to Pyatt's reported gains, between April 2017 and February 2019, Winston Reed actually incurred net losses totaling $13,416.68.  (Ex. 36).

The SEC has statutory authority to seek injunctive relief barring conduct that violates federal securities laws.  See 15 U.S.C. §§ 77t(b), 78u(d).  Still, a preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief" and may never be awarded "as of right."  Winter v. Nat. Res. Def. Council, 555 U.S. 7, 22–24 (2008).  To obtain such relief, a plaintiff "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that the injunction is in the public interest."  Id. at 20.  Having reviewed the uncontroverted evidence, the Court finds that the SEC has made a clear showing as to each of these elements.  Accordingly, the Court will enter a preliminary injunction halting Defendants' investment activity and freezing Defendants' assets to prevent their dissipation.  See Fed. Trade Comm'n v. Pukke, No. 19-2204, 2020 WL 883121, at *1 (4th Cir. Feb. 24, 2020).  The Court briefly discusses each element below.

First, regarding the merits, the SEC may obtain an injunction barring future violations of federal securities laws where it demonstrates past violations of those laws and a likelihood of continued violations absent an injunction.  See Kemp v. Peterson, 940 F.2d 110, 113 (4th Cir. 1991).  As was carefully articulated by the SEC in its motion, the foregoing facts establish a reasonable likelihood of success in proving that Defendants violated Section 17(a) of the Securities Act, as well as Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  (Doc. No. 4 at 21).  The Court adopts that analysis here.  As to continued violations, Pyatt's promise to

investors that he will create a "new trading platform" indicates that similar, fraudulent activity will continue absent an injunction by this Court.

Second, investors are likely to incur irreparable harm in the absence of an injunction. As discussed above, Pyatt has substantially dissipated the entrusted funds on his own personal expenses. By enjoining Pyatt's investment operation and by freezing his assets, the Court will ensure that any future money judgment will not be frustrated through the dissipation of any remaining assets. See Pukke, 2020 WL 883121, at *1; Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp., 17 F.3d 691, 696 (4th Cir. 1994).

Third and finally, the balance of the equities and the public interest weigh strongly in favor of granting a preliminary injunction in this case. See Nken v. Holder, 556 U.S. 418, 435 (2009) (recognizing these two "factors [can] merge when the Government is the opposing party"). As discussed above, the SEC has adduced evidence showing that Defendants are likely violating several securities laws through their fraudulent scheme. Without an injunction, Defendants could continue to harm the public by violating securities laws and by misappropriating ill-gotten gains from future investors. See id.; In re Sanctuary Belize Litig., 409 F. Supp. 3d 380, 396 (D. Md. 2019); S.E.C. v. Thibeault, 80 F. Supp. 3d 288, 293 (D. Mass. 2015). On balance, the Court finds that the equities and public interest thus weighs in favor of granting the preliminary injunction.

For the foregoing reasons, the SEC has made a clear showing that a preliminary injunction is warranted at this time. Accordingly, the Court will extend the terms of its temporary restraining order pending the resolution of this matter or further order of this Court. The Court recognizes that Pyatt has proceeded pro se up to this point. Thus, the Court notes that he may file a motion to dissolve or reconsider this injunction if he obtains counsel or adduces additional facts supporting dissolution. See, e.g., Ciena Corp. v. Jarrard, 203 F.3d 312, 319 (4th Cir. 2000).

**ORDER**

**IT IS, THEREFORE, ORDERED** that that SEC's motion for preliminary injunction is **GRANTED**. Therefore, the Court extends the terms of its temporary restraining order entered against Defendants Pyatt and Winston Reed (Doc. No. 6) pending the resolution of this matter or further order of this Court.

Signed: March 9, 2020

Max O. Cogburn Jr.
United States District Judge